## JAMES C. HOW vs. THE CHESAPEAKE AND DELAWARE CANAL COMPANY.

Manner of striking juries at bar.

M. sold to the canal company a part of his farm to be flooded, received the price, and bound himself to convey when called on. The company took possession, by flooding it, and continued so to use it. M. afterwards sold his farm to H., without reserving the part so flooded. H. brought his action against the canal company, for continuing to flood the land. *Held*, that he could not recover.

A certificate of survey of land for the use of a canal, with the owner's receipt for its value, is a good defence to an action for damages for so using it.

Any entry upon another's land, without title or authority, makes the party liable to damages; but the amount thereof depends on the damage actually done.

If such entry in fact increases the value of the property, the owner cannot recover any more than nominal damages.

CASE. In this case the question arose as to the mode of challenging jurors.

The plaintiff passed the panel without challenge; the defendant struck a juror, and the plaintiff then struck one of the jurors originally drawn. The defendant's counsel objected to this, saying that the plaintiff, by passing the original panel, had waived his right of challenging any except the newly drawn jurors; and if he could now be permitted to go back to the jurors first drawn, he would throw the first challenges all upon the defendant, and make his own challenges from the panel thus corrected.

*The Court* said:—The act of assembly (*sec.* 4,) gives to each party the right to challenge, without cause, *any juror* drawn, not exceeding three in number; without designating the order or mode of exercising this right. If the plaintiff is required to exhaust his right before the defendant strikes, he has no opportunity to challenge the newly drawn jurors; if he is allowed to strike consecutively with the defendant, and passes the panel without objection, the exercise of the full challenge after the defendant has struck, would give him an improper advantage. The first-section of the act (*Digest,* 113,) points out the manner of striking special juries, each party being required to exercise the right alternately, by striking one juror. Applying this mode to the present case, with a proper construction of the act, we think the proper mode of striking is *alternately*, each party striking one juror, and the neglect of either party to strike in turn, is a waiver of his right *for that one challenge;* his remaining challenges to be made out of the whole panel, those originally drawn, and substitutes drawn in place of those challenged by either party.

This was an action against the canal company for overflowing the plaintiff's land. The plaintiff was the owner of a farm on the south side of the canal, a part of which, (eight or nine acres) is overflowed by the waters of the canal. A part of this (six or seven acres) had been flooded ever since the canal was opened; which was done by agreement of purchase between the company and Thomas Mulford, the then owner. This agreement was in writing; the consideration was paid; and Mulford stipulated to execute a deed conveying the title when called on. He never executed the deed, but afterwards conveyed the whole farm, including the part so overflowed, to Mr. How. In regard to another part of the land flooded, the defence was that it was authorized by the plaintiff himself, and paid for by the defendants. That acre was dry and used by the company to mend the canal banks; was measured by a surveyor, and the plaintiff gave a receipt for it in these words:—

August 13, 1839. Certificate by John D. Dilworth, that a piece of land broken by Chesapeake and Delaware Canal Company, on the estate of Rev. J. C. Howe, measures ninety-eight hundredths of an acre.

August 22, 1839. Received of the Chesapeake and Delaware Canal Company $392, in full of the above survey.

Jas. C. How.

As to the residue of the land flooded, the defence insisted that the plaintiff was not only not injured by such flooding, but was greatly benefitted by having a water front to his land, which made it valuable for wharves and commercial facilities.

*The Court* charged the jury, that if the defendants were in the occupation and possession of the six or seven acres before the conveyance to How; having paid for the same, under an agreement for a deed; and had continued in possession until this suit was brought; the plaintiff could not recover any damages for the continued flooding of that portion. As to the acre dug upon by the defendants, the jury must construe the receipt of plaintiff, in connection with the other evidence; and if they thought the flooding of that acre was inconsistent with any rights which that receipt conferred, this might be a subject for assessing damages. As to this, and as to any other land overflowed, the rule of damage would be the actual injury the party had sustained. The law implies some injury from any unlawful entry upon, or use of the land of another;

and therefore if any land which plaintiff was in the possession of had been overflowed by defendants' canal, he must recover some damages, even though he was benefitted by the flooding; but as to any other than nominal damages, it must depend upon actual, and not constructive injury, taking into consideration the benefits as well as the disadvantages of the act complained of.

The case was very fully argued by *Whiteley* and *Rodney* for plaintiff, and *Gray* and *Bayard* for defendants; the trial occupying two days.

Booth, *Chief Justice.*—This is an action on the case for a nuisance, in overflowing the land of the plaintiff, for which he seeks to recover a compensation in damages. The defendants plead the general issue "*not guilty,*" which is a denial of every allegation material or essential to the plaintiff's right of recovery, and throws the whole burden of proof upon the plaintiff. He must, therefore, show by sufficient and satisfactory evidence to the jury—1. That he was not only the owner, but in the actual possession of the land overflowed, at the time the alledged injury was committed. 2. That the injury was caused by the wrongful act of the defendants, and in the manner set forth in the declaration. 3. That he has sustained damages, and that they are the natural result of the overflowing of his land.

1. It appears that the water was let into the Chesapeake and Delaware Canal, sometime in the summer of 1828 or 1829, and that since that period, a portion of the land now claimed by the plaintiff has been overflowed; that the whole tract of land then belonged to and was in the possession of Thomas Mulford; and that six acres and fifteen perches were overflowed by the canal company, with his consent.

On the 21st of November, 1833, he executed an instrument of writing to the canal company under his hand, in these words:—

St. Georges, November 21, 1833. Received of the Chesapeake and Delaware Canal Company $88 62, in full for damage for flooding six acres and fifteen perches of land on my farm, lying on the south east side of the Chesapeake and Delaware Canal, immediately west of the Lock, at St. Georges, being a part of a farm late of Thomas McDonough, and for which I will at any time give to said company a title, on condition they pay for the deed. This payment includes all damage that has heretofore been done, or which may

hereafter be done said farm by water held as high as the present works will contain.                           Thos. Mulford.

The only reasonable construction that can be given to this paper is—1. That $88 62 were paid by the defendants, and received by Mulford, in full satisfaction for flooding six acres and fifteen perches of his land.   2. That he will convey the title to the company of the six acres and fifteen perches, they paying for the deed of conveyance.   3. That the payment of $88 16, was in full satisfaction for all damage done before the date of the agreement, or which might thereafter be done to the land, by the waters of the canal held as high as the works of the canal would then contain.   By this agreement the company were put in the possession of six acres and fifteen perches, as forming part of the canal, and have been in possession until this time.   The canal company could at any time have enforced a specific performance of the contract, without applying to the Court of Chancery.   This is not the grant of an easement, but the conveyance of an equitable title to the six acres and fifteen perches.   The plaintiff contends that he is a purchaser for a valuable consideration, without notice.   If the canal company had the canal made, the waters of the canal covered the land; and it was thus used as a part of the canal; the plaintiff had notice.   Any state of facts that would put a reasonable man upon due inquiry, is evidence of notice.   Plaintiff purchased January 21, 1835, between six and seven years after the defendants were in possession.   He silently acquiesced, from all that appears in this case, until he commenced his present suit; and although the value of his land is said to be enhanced by reason of the waters of the canal overflowing the six acres and fifteen perches, he complains of this overflow as a nuisance, and seeks to recover damages; when if the alledged nuisance were removed, that is, if the waters were shut off by an embankment, his land would be deteriorated in value.   It results then, that the plaintiff was not in possession of the six acres and fifteen perches, and therefore, he cannot recover for any injury done to that part of the land.

As to the paper signed by plaintiff, acknowledging the receipt of $392, for ninety-eight hundredths of an acre.   It is left to the jury to decide from the paper and the other facts in the case, whether the plaintiff intended to sell the ninety-eight hundredths of an acre. If he did, he cannot recover for any injury to it.   Plaintiff put de-

fendants into possession. Has any thing been done to determine the possession?

2. Suppose the plaintiff has proved himself in possession of all the land overflowed, except six acres and fifteen perches, then he is bound to show that the land was injured by being flooded; and that the injury was caused by the wrongful act of defendants, in the manner set forth in the narr. This is a question which is left to the jury.

Damages. These are with the jury. Their judgment in this respect is regulated by the rules of law, and the evidence before them. The true measure is the actual injury done to the plaintiff's possession, by depriving him of the use of the land for agricultural purposes. The value of the land for such purposes, is limited to the time between the 1st of January, 1848, and the commencement of this suit. The law presumes some damage from any wrongful act of one person to the possession of another. From any unlawful entry on a man's land, the law implies damage. Upon the same principle, the law implies damage from unlawfully flooding the land of another. But in all these cases, unless an actual injury and loss to the plaintiff is proved, the defendant is answerable only in nominal damages. If from the evidence it appears, that the land has been enhanced in value by the overflow of the water of the canal, to a greater extent than any injury that has happened to the plaintiff by the overflow, he is not entitled to more than nominal damages, and costs.

Verdict for plaintiff—damages $9 62.

*Whiteley* and *Rogers*, for plaintiff.
*Gray* and *Bayard*, for defendants.